**LEVI & KORSINKSY LLP**
ADAM C. MCCALL (State Bar No. 302130)
amccall@zlk.com
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 985-7290
Facsimile: (866) 367-6510

**LEVI & KORSINKSY LLP**
Donald E. Enright (to be admitted pro hac vice)
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com

*Counsel for Plaintiff Steven Merola*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| STEVEN MEROLA, Individually and On Behalf of All Others Similarly Situated, | Case No. 16-cv-01237 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>CLASS ACTION</u> |
| FRANK WITNEY, NELSON CHAN, GARY GUTHART, JAMI NACHTSHEIM, RICCARDO PIGLIUCCI, MERILEE RAINES, ROBERT TRICE, and AFFYMETRIX, INC. | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | |

## <u>CLASS ACTION COMPLAINT</u>

Steven Merola ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.      This is a class action brought by Plaintiff on behalf of himself and the other public stockholders of Affymetrix, Inc. ("Affymetrix" or the "Company"), other than Defendants (defined below) and their affiliates, against Affymetrix and the members of the board of Affymetrix (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and breaches of fiduciary duties in connection with the proposed merger between Affymetrix and Thermo Fisher Scientific Inc. ("Thermo Fisher").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 (the "Proxy") to be filed with the SEC.  The Proxy recommends that Affymetrix stockholders vote in favor of approving a proposed transaction (the "Proposed Transaction") whereby Thermo Fisher will acquire Affymetrix and each Affymetrix share will be exchanged for $14 in cash.

3.      As discussed below, the consideration Affymetrix's stockholders stand to receive in connection with the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common stockholders of Affymetrix.  Indeed, as revealed by the Proxy, the Proposed Transaction is the product of a truncated process that was blessed by the conflicted "fairness opinion" of Morgan Stanley, which holds an undisclosed 4,983,858 shares of Thermo Fisher stock, worth approximately $648 million.  Even more troubling, the Affymetrix Board did not consider this obvious conflict of interest nor does the Proxy disclose whether any member of the Morgan Stanley team also participated in the current financing and advisory services Morgan Stanley is

providing to Thermo Fisher or the other $2 million in services Morgan Stanley provided to Thermo Fisher between December 11, 2013 and January 4, 2016.

4.     Defendants have now asked Affymetrix's stockholders to support the Proposed Transaction in exchange for inadequate consideration based upon the materially incomplete and misleading representations and information contained in the Proxy, in violation of Sections 14(a) and 20(a) of the Exchange Act and the Board's fiduciary duties.  Specifically, the Proxy contains materially incomplete and misleading information, including: i) the financial analyses conducted by Morgan Stanley, financial advisor to the Affymetrix Board; ii) Morgan Stanley's conflicts of interest; and iii) information related to Affymetrix's financial projections.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting a shareholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to Affymetrix's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breaches of fiduciary duty.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.  The Court further has pendant jurisdiction over the other claims.

7.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

CLASS ACTION COMPLAINT

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Affymetrix maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, an owner of Affymetrix common shares and has held such shares since prior to the wrongs complained of herein.  Plaintiff is a citizen of the state of Massachusetts.

10.      Affymetrix is a Delaware corporation headquartered in Santa Clara, California, and is the market leader in the field of DNA chip technology (also commonly known as biochips).  The Company has established its GeneChip system as the platform of choice for analyzing complex genetic information that is used for research into the relationship between genes and diseases, as well as drug discovery and development, and, more recently, diagnostics.  The GeneChip system is primarily marketed to pharmaceutical and biotechnology companies, academic research centers, and clinical reference laboratories.  Affymetrix's GeneChip probe array technology is created by semiconductor fabrication techniques that etch genetic information onto small glass chips.  These arrays contain data of DNA sequences on which scientists may conduct experiments.  GeneChip systems consist of several integrated components: disposable DNA probe arrays housed in a cartridge; fluorescent reagents to label the arrays; a laser scanner to read the arrays; and software to analyze the data.  By monitoring the expression of genes under different conditions and at different times, researchers can use probe arrays to understand the

CLASS ACTION COMPLAINT

interrelationship between gene expression and disease.  In addition, DNA analysis can elucidate single nucleotide polymorphisms (SNPs), which are discrete changes in the sequence of normal genes that may be introduced by environmental or other factors, such as errors in the replication of genes.  An SNP is the most common form of genetic variation, and certain genetic mutations correlate with specific diseases.  DNA analysis includes genotyping, which includes the process of determining which SNPs are present in genes.  Separately, disease management is an emerging field that integrates patient diagnosis, treatment and monitoring.  Affymetrix products may play a role in this growing field for optimizing patient treatment.

11.    Individual Defendant Jami D. Nachtsheim ("Nachtsheim") has served as the Chairwoman of Affymetrix since January 2015 and as a director since March 2010.  Ms. Nachtsheim is also the Chairwoman of the Compensation Committee.  Upon information and belief, Ms. Nachtsheim is a citizen of the state of California.

12.    Individual Defendant Frank Witney, Ph.D. ("Witney") has served as President, Chief Executive Officer and a director since July 2011.  This is not the first time Dr. Witney has sold a company to Thermo Fisher.  In May 2011 as the CEO of Dionex Corp. and serving alongside defendant Mr. Pigliucci, Dr. Witney sold the company to Thermo Fisher for $2.1 billion. In addition, Dr. Witney currently serves on the Board of DS Sciences Inc. alongside Mr. Pigliucci. Upon information and belief, Dr. Witney is a citizen of the state of California.

13.    Individual Defendant Nelson Chan ("Chan") has served as a director since March 2010 and is the Chairman of the Audit Committee and a member of the Compensation Committee. Upon information and belief, Mr. Chan is a citizen of the state of California.

CLASS ACTION COMPLAINT

14.     Individual Defendant Gary Guthart, Ph.D. ("Guthart") has served as a director since May 2009 and is a member of the Compensation Committee.  Upon information and belief, Dr. Guthart is a citizen of the state of California.

15.     Individual Defendant Riccardo Pigliucci ("Pigliucci") has served as a director since May 2015 and is a member of the Compensation Committee.  In May 2011 as the lead independent director of Dionex Corp. and serving alongside defendant Dr. Witney, Mr. Pigliucci sold the company to Thermo Fisher for $2.1 billion.  Mr. Pigliucci also served on the board of DVS Sciences Inc. alongside Dr. Witney.  Upon information and belief, Mr. Pigliucci is a citizen of the state of California.

16.     Individual Defendant Merilee Raines ("Raines") has served as a director since January 2015 and is a member of the Audit Committee.  Upon information and belief, Ms. Raines is a citizen of the state of Maine.

17.     Individual Defendant Robert Trice, Ph.D. ("Trice") has served as a director since 2006, is the Chairman of the Nominating and Corporate Governance Committee and a member of the Audit Committee.  Upon information and belief, Dr. Trice is a citizen of the state of Maryland.

18.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants," the defendants identified in paragraphs 11-17 are collectively referred to as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Affymetrix common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

CLASS ACTION COMPLAINT

20.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable.  As of October 26, 2015, there were over 79 million outstanding Affymetrix shares.  The holders of these shareholders are believed to be geographically dispersed through the United States;

(b)     There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members.  The common questions include, *inter alia*, the following:

i.   Whether Defendants have breached their fiduciary duties of due care, good faith, loyalty, and candor to Affymetrix stockholders and the Class;

ii.  Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated as presently anticipated.

(c)     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(d)     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

CLASS ACTION COMPLAINT

**SUBSTANTIVE ALLEGATIONS**

**A.      Company Background and its Poise for Growth**

21.      Headquartered in Santa Clara, California, Affymetrix is a pioneer in microarray technology and a leader in genomics analysis. Affymetrix now develops and provides innovative technologies that enable multiplex and parallel analysis of biological systems at the cell, protein, and gene level.  Affymetrix's extensive portfolio of translational and clinical solutions enables scientists and clinicians to rapidly translate their research into understanding underlying disease mechanisms, identifying biomarkers for personalized medicine, creating novel molecular diagnostic tests, and improving genetic marker-assisted breeding programs in agriculture for human health and wellness.

22.      Beginning in 2011 Affymetrix started a three phase plan to reduce its dependence on its GeneChip Expression product line, which has faced intense competition and constrained growth opportunities in certain applications, to diversify its revenue streams and to expand into the growing markets for translational medicine, molecular diagnostics and applied sciences, such as agricultural biotechnology.

23.      Affymetrix completed Phase I in 2012, which involved the realignment of the Company's product portfolio, the launch of the Company's cytogenetic microarray produce line, development of its Axiom genotyping system and the acquisition of eBioscience.

24.      Phase II was completed in 2014.  That phase involved a corporate restructuring that led to significant cost savings, reduction of debt, development of newer product lines, and a return to growth and profitability.

25.      Phase III began in 2015 and the Company is just beginning to see the benefits of that phase.  Phase III has been centered upon the Company's goal of leveraging the work in the

prior phases to grow its franchises in translational medicine, molecular diagnostics, applied markets and single cell biology.

26.    Not surprisingly, as a result of moving toward the end of the Company's multi-year change in strategy, Affymetrix has experienced great success.

27.    In October 2015, Affymetrix entered into a five year senior credit facility with Bank of America in an aggregate amount of $100 million of revolving commitment.  Affymetrix borrowed $20 million under the agreement and used that to pay off all of the Company's outstanding senior debt under its credit agreement entered into in 2012.

28.    On October 28, 2015, Affymetrix reported its Third Quarter 2015 operating results.  Affymetrix reported that its revenue increased by 3.6% on a constant currency basis.  Defendant Witney stated that "[w]e generated strong growth in our clinical and eBioscience businesses in Q3 which grew by more than 30% and 11% respectively, the strongest organic growth for eBioscience since we completed the acquisition more than three years ago…. We reiterate our FY15 guidance for mid-single digit revenue growth.  As a result of our strong gross margin and continued cost controls, we are raising our adjusted EBITDA guidance to 18-20% for 2015."

29.    On February 17, 2016, after the announcement of the Proposed Transaction, Affymetrix reported its further quarter 2015 operating results.  Affymetrix reported that revenue increased 6.8% on a constant currency basis.  The Company also reported that GAAP net income was $10.1 million, or $0.13 per diluted share, as compared to a GAAP net loss of $3.8 million, or $0.05 per diluted share, in 2014.

30.    Yet despite the Company's historical performance and poise for future success, the Defendants have entered into the Merger Agreement for inadequate consideration, thus depriving the Plaintiff and the public stockholders of the Company the opportunity to participate in the

growth of the Company they have loyally invested in – and without so much as informing Affymetrix stockholders of the material facts relating to the Proposed Transaction.

**B.**     **The Unfair Sale Process**

31.     As described in the Proxy, the Proposed Transaction is the result of a disorganized, unfocused process that was designed to advance Thermo Fisher's interests at the expense of Affymetrix's stockholders.

32.     The truncated sale process began in August 2015 when the board first considered M&A opportunities.  Two months later in October 2015 the Board authorized the retention of Morgan Stanley as Affymetrix's financial advisor.

33.     Between October 2015 and December 2015, the Company engaged in discussions with five potential purchasers, including Thermo Fisher.

34.     Although the Board considered Morgan Stanley's conflicts of interest on October 19, 2015, the Board wholly failed to consider the fact that Morgan Stanley held over $648 million in  Thermo Fisher stock, thereby motivating Morgan Stanley to favor a transaction with Thermo Fisher.

35.     Thermo Fisher submitted its first indication of interest of between $12.00 and $13.00 per share on December 22, 2015.  The Board swiftly went to work selling the Company as quickly as possible.

36.     Rather than put Company C in a bidding war with Thermo Fisher, the Affymetrix Board rolled over.   On December 31, 2015, Affymetrix and Thermo Fisher entered into an exclusivity agreement that reflected a price per share of $14.00, a target signing date of January 8, 2016 (before the beginning of the J.P. Morgan Healthcare Conference) and an exclusivity period that would end on January 12, 2016. In accordance with the terms of the exclusivity agreement,

Morgan Stanley was then instructed to inform Company A, Company B and Company C that Affymetrix was no longer pursuing a process with them.

37.     On January 4, Affymetrix received an unsolicited revised written non-binding proposal from Company C indicating a price of $12.50 per share in cash.   On January 5, Company C submitted a further unsolicited revised written non-binding proposal to acquire Affymetrix for $13.50 per share in cash.  Because the Board had already tied its hands with the exclusivity agreement with Thermo Fisher, nothing could be done to negotiate with Company C for a higher offer.

38.     Weeks after receiving its first indication of interest from Thermo Fisher, on January 8, 2016, the Board approved the transaction with Thermo Fisher.

39.     Affymetrix and Thermo Fisher announced the Proposed Transaction on January 8, 2016.  The press release provided in pertinent part:

> Thermo Fisher Scientific Inc. (NYSE: TMO), the world leader in serving science, and Affymetrix Inc. (NASDAQ: AFFX), a leading provider of cellular and genetic analysis products, today announced that their boards of directors have unanimously approved Thermo Fisher's acquisition of Affymetrix for $14.00 per share in cash. The transaction represents a purchase price of approximately $1.3 billion.
>
> Affymetrix's technologies enable parallel and multiplex analysis of biological systems at the cellular, protein and genetic level, facilitating the transition of research tools into clinical and applied markets. The company's products are used by customers working in life sciences and translational research, molecular diagnostics, reproductive health and agricultural biotechnology. Based in Santa Clara, California, Affymetrix has approximately 1,100 employees worldwide and maintains sales and distribution operations primarily in the U.S., Europe and Asia. The business, which has annual revenues of approximately $350 million, will be integrated into Thermo Fisher's Life Sciences Solutions Segment.
>
> "The acquisition of Affymetrix will strengthen our leadership in biosciences and create new market opportunities for us in genetic analysis," said Marc N. Casper, president and chief executive officer

of Thermo Fisher Scientific. "In biosciences, the company's antibody portfolio will significantly expand our offering in the fast-growing flow cytometry market, and customers will have greater access to these products through our global scale and commercial reach. In genetic analysis, Affymetrix's technologies are highly complementary and present new opportunities for us in targeted clinical and applied markets. For shareholders, we expect the transaction to create value by generating attractive financial returns, including immediate accretion to our adjusted EPS."

Frank Witney, president and chief executive officer of Affymetrix, said, "Joining Thermo Fisher creates significant value for our customers, employees and shareholders. We will be able to build on our strong history of close collaboration with customers in our target markets by leveraging Thermo Fisher's deep relationships, particularly in biopharma, as well as their global scale and leading presence in Asia-Pacific. We are excited about the opportunity to combine our portfolios and strengthen our position in high-growth markets such as single-cell biology, reproductive health and AgBio. Our employees will benefit by being part of an industry-leading company, which brings many opportunities for career growth and development. We look forward to working closely with the Thermo Fisher team to ensure a smooth transition and integration."

Casper concluded, "We're pleased to welcome our new colleagues from Affymetrix to Thermo Fisher. Frank Witney and the entire Affymetrix team have done a great job of strengthening the business, and we're excited about the opportunity to leverage Thermo Fisher's scale and depth of capabilities to build on that momentum and accelerate growth."

C.     **The Deal Protection Devices**

40.     In addition to failing to engage in a fair and reasonable sales process, the Individual Defendants agreed to certain deal protection devices that operate conjunctively to deter other suitors from submitting a superior offer for Affymetrix.

41.     First, Section 6.03 of the Merger Agreement contains a "no solicitation" provision barring the Company from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by Thermo Fisher.

42. Pursuant to § 6.3(c) of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Company must notify Thermo Fisher of the bidder's identity and the terms of the bidder's offer. Thereafter, § 6.03(c) demands that should the Board determine to enter into a superior competing proposal, it must grant Thermo Fisher four days in which the Company must negotiate in good faith with Thermo Fisher (if Thermo Fisher so desires) and allow Thermo Fisher to amend the terms of the Merger Agreement to make a counter-offer so that any competing proposal no longer constitutes a "Superior Proposal."

43. In other words, the Merger Agreement gives Thermo Fisher access to any rival bidder's information and allows Thermo Fisher a free right to top any superior offer simply by matching it. Accordingly, no rival bidder is likely to emerge and act as a stalking horse because the Merger Agreement unfairly assures that any "auction" will favor Thermo Fisher, which can piggy-back upon the due diligence of the foreclosed second bidder.

44. Moreover, pursuant to § 11.04(b), the Company also agreed to pay a termination fee of $55,000,000 if, among other things, the Company accepts a superior proposal.

**D.** **The Materially Incomplete and Misleading Proxy**

45. On February 12, 2016, Defendants caused a Preliminary Proxy to be filed with the SEC (the "Proxy"). The information contained in the Proxy will be disseminated to Affymetrix's stockholders to solicit their vote in favor of the Merger. The Proxy denies the Company's stockholders material information and presents misleading information concerning the financial and procedural fairness of the Merger. Without such information, Affymetrix stockholders cannot make a fully informed decision about whether to vote in favor of the Merger.

**Conflicts of Interest**

46. The Proxy fails to disclose on page 37 that Morgan Stanley holds 4,983,858 shares of Thermo Fisher stock, worth approximately $648 million. This is material because Morgan

13

Stanley's ownership of Thermo Fisher stock rendered them conflicted since Morgan Stanley is economically motivated to ensure Affymetrix is sold to Thermo Fisher at a below market price because that will increase the value of its Thermo Fisher stock.  The Proxy also fails to disclose whether the Board considered this conflict of interest.

47.     The Proxy fails to disclose on page 37 whether any member of the Morgan Stanley team providing advice to Affymetrix has any business relationship with Thermo Fisher.  This information is important so that stockholders can understand the degree of Morgan Stanley's conflict of interest resulting from the prior and current work it has performed for Thermo Fisher. The Proxy also fails to disclose the expected or potential fees Morgan Stanley may receive in connection with the work it is currently performing for Thermo Fisher.

48.     The Proxy does not disclose whether Dr. Witney is expected to remain with the Company post close and if so when discussions regarding his post-merger employment occurred. This is material because Dr. Witney was a primary negotiator of the Proposed Transaction and if he was simultaneously negotiating for post-merger employment stockholders need to understand he had a conflict of interest.

**Morgan Stanley's Financial Analysis**

49.     The Proxy describes Morgan Stanley's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Affymetrix's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

CLASS ACTION COMPLAINT

50.     With respect to Morgan Stanley's *Affymetrix Selected Comparable Companies Analysis*, the Proxy fails to disclose (i) the individual observed metrics and multiples for each of the selected companies, as well as any multiples examined besides 2016 revenue and EBITDA; and (ii) Morgan Stanley's rationale for using adjusted EBITDA for Affymetrix and using unadjusted EBITDA in its calculation of the peer companies' pricing multiples.

51.     With respect to Morgan Stanley's *Affymetrix Discounted Equity Value Analysis*, the Proxy fails to disclose: (i) the individual inputs and assumptions used to arrive at Affymetrix's weighted average cost of capital of 8.7%.

52.     With respect to Morgan Stanley's *Select Precedent M&A Transactions Analysis*, the Proxy fails to disclose the individual observed metrics and multiples for each of the selected transactions.

53.     With respect to Morgan Stanley's *Affymetrix Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the formula or definition for free cash flow and whether Morgan Stanley used levered or unlevered free cash flow; (ii) the basis for the estimated terminal value as well as the corresponding implied terminal multiples if the estimated terminal value was based on an assumed range of growth rates or the corresponding perpetuity growth rates if the estimated terminal value was based on an assumed range of terminal pricing multiples; and (iii) whether the value of Affymetrix's tax assets was considered in any of Morgan Stanley's other analyses.

**Management's Projections Used By Morgan Stanley**

54.     The Proxy indicates that Morgan Stanley relied on certain internal projections for fiscal years 2015-2019 in rendering its fairness opinion.  However, the Proxy omits the Company's internal projections for the following items: (i) Unlevered free cash flows; (ii) Reconciliation of GAAP net income to non-GAAP unlevered free cash flows and non-GAAP

EBITDA; (iii) net operating loss carryforward balances and utilization; (iv) Debt and cash balances; (v) Fully diluted share count; (vi) Synergies; and (vii) All figures for stub period consisting of the second half of 2014.

55.     In addition, the Proxy fails to disclose material information concerning the creation of the projections, including: (i) when in December the Base Case and the Unrisked Upside Case were prepared; (ii) when the Base Case was adjusted; (iii) why the Base Case was prepared; (iv) how the "manner" in which the Unrisked Upside Case was prepared differed from that in which the Base Case was prepared; and (v) the definition of "free cash flow" and whether it is levered or unlevered.

56.     These material omissions of the best estimates of the Company's financial future needs to be remedied prior to the stockholder vote in order to allow Affymetrix stockholders to make a fully informed decision on the Proposed Transaction.

**Material Omissions Concerning the Flawed Sales Process**

57.     The Individual Defendants fail to disclose material information relating to, among other things, the sales process leading up to the Proposed Transaction, including:

58.     Whether the Board considered retaining any other financial advisors and the Board's rationale for engaging Morgan Stanley;

59.     The pending and potential fees payable to Morgan Stanley by Thermo Fisher for Morgan Stanley's current assignments with Thermo Fisher;

60.     The Board's basis for failing to reach out to Company A, Company B or Company C prior to entering into exclusivity with Thermo Fisher, particularly in light of the January 26, 2016 proposal bid deadline; and

61.     The details of any negotiations concerning the deal protection devices, including

the 4.23% termination fee.

62.     As a result of the Individual Defendants' breaches of fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Affymetrix's assets and business and will be prevented from obtaining the intrinsic value of their equity ownership of the Company.

63.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

**E.     Defendants Knew or Negligently Disregarded that the Proxy Omits Material Information**

64.     The Individual Defendants knew or negligently disregarded that the Proxy omits material information concerning the Proposed Transaction and/or contains the materially incomplete and misleading information discussed above.

65.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC.  Indeed, most of the Individual Defendants are signatories to the Proxy, and thus knew or should have known that the Proxy contains misleading partial disclosures of the history leading up to the Merger and the financial analyses performed by Morgan Stanley.

66.     Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Morgan Stanley's financial analyses which has been omitted from the Proxy, as well as the terms of all strategic alternatives discussed by Affymetrix and Morgan Stanley, and thus knew or should have known that such information has been omitted.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Only Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9**

67.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein, except paragraphs 19 and 20.

68.     Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, among other things, the future value of Affymetrix, certain key inputs and assumptions of the financial analyses performed by Morgan Stanley in support of its fairness opinion, the financial analyses performed by Morgan Stanley, and the value of certain strategic alternatives that were considered by the Company.

69.     In so doing, Defendants made materially incomplete and misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

70.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

71.     Specifically, and as detailed in ¶¶ 35-42 above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) the future value of Affymetrix; (ii)

certain key inputs and assumptions of the financial analyses performed by Morgan Stanley in support of its fairness opinion; (iii) the financial analyses performed by Morgan Stanley; and (iv) Affymetrix's projections.

72. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Morgan Stanley both reviewed and discussed their financial analyses with the Board and the Conflicts Committee during various meetings, and further states that the Board and the Conflicts Committee considered the financial analyses provided by Morgan Stanley as well as Morgan Stanley's fairness opinion and the assumptions made and matters considered in connection therewith. The Individual Defendants knew or should have known that the material information identified in ¶¶ 35-42 above has been omitted from the Proxy, rendering the sections of the Proxy identified in ¶¶ 35-42 above to be materially incomplete and misleading.

73. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

74.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein, except paragraphs 19 and 20.

75.     The Individual Defendants acted as controlling persons of Affymetrix within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Affymetrix, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

76.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

77.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board and the Conflicts Committee prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants

CLASS ACTION COMPLAINT

to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

78.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

79.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

80.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

81.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

### Claim for Breach of Fiduciary Duty Against the Individual Defendants

82.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

83.     The Individual Defendants, as Affymetrix directors and/or officers, owe Plaintiff and the Class the utmost fiduciary duties of due care, good faith, loyalty, and candor.  By virtue of

their positions as directors and/or officers of Affymetrix and their exercise of control over the business and corporate affairs of the Company, the Individual Defendants have, and at all relevant times had, the power to control and influence, and did control and influence, and cause the Company to engage in the practices complained of herein.  The Individual Defendants were each required to: (a) use his/her ability to control and manage Affymetrix in a fair, just and equitable manner; and (b) act in furtherance of the best interests of Affymetrix and its stockholders and not his or her own.

84.     The Individual Defendants failed to fulfill their fiduciary duties in connection with the Merger.  By entering into, and consummating the Merger without regard to the fairness of the Transaction to Affymetrix's stockholders, they have violated their fiduciary duties of care and loyalty owed to Affymetrix's public stockholders and have acted to put their personal interests ahead of the interests of the stockholders, thereby unfairly depriving Plaintiffs and other members of the Class of the true value of their investment in Affymetrix.

85.     Moreover, in breach of their fiduciary duties, the Individual Defendants have inadequately disclosed material information concerning the Merger.

86.     Because the Individual Defendants dominated and controlled Affymetrix's business and corporate affairs and were in possession of private corporate information concerning Affymetrix's assets, business, and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Affymetrix that makes it inherently unfair for them to enter the Company into a Transaction wherein they will reap disproportionate personal benefits to the exclusion of maximizing stockholder value.

CLASS ACTION COMPLAINT

87.    As demonstrated by the allegations above, the Individual Defendants in bad faith breached their fiduciary duties because, among other reasons, they failed to:

(a)    Ensure a fair and rigorous negotiation process for the Merger;

(b)    Fully inform themselves of the market value of Affymetrix before entering into the Merger;

(c)    Act in the best interests of the public stockholders of Affymetrix common stock;

(d)    Maximize stockholder value;

(e)    Disclose all material information regarding the Merger; and

(f)    Act in accordance with their fundamental duties of due care and loyalty.

88.    By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have knowingly and recklessly breached their duties of due care, good faith, and loyalty owed to the stock holders of Affymetrix, including Plaintiff and the other members of the Class.

89.    As a result of the Individual Defendants' breaches of fiduciary duty in agreeing to the Merger, Plaintiff and the other members of the Class have been and will be harmed.

## COUNT IV

**Claim for Equitable Relief Against the
Individual Defendants**

90.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

91.    The Individual Defendants at all times relevant to this Complaint, owed a duty not to directly or indirectly deprive Plaintiff and the members of the Class of the statutory remedy of appraisal.

23

CLASS ACTION COMPLAINT

92.     By withholding the critical and material information detailed in paragraphs 35-42, Plaintiff and the members of the Class lacked sufficient information to determine whether to pursue their statutory appraisal rights.

93.     The Individual Defendants also are afforded no protection pursuant to 8 Del. C. § 102(b)(7), because that statute only permits a corporation to exculpate directors from monetary liability for breaches of fiduciary duty and therefore that exculpatory provision does not apply to claims for equitable relief.

94.     Plaintiff and the members of the Class have no adequate remedy at law.

95.     As a result of the Individual Defendants' inequitable conduct, Plaintiff and the members of the Class respectfully request that the Court exercise its broad discretion and inherent powers of equity to adapt its relief to the particular rights and liabilities of each party and award a remedy of quasi-appraisal.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.      Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C.      Awarding Plaintiff and the Class a quasi-appraisal remedy;

D.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

CLASS ACTION COMPLAINT

E.      Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  March 14, 2016                    Respectfully submitted

**LEVI & KORSINSKY LLP**

By:     */s/ Adam C. McCall*
Adam C. McCall (SBN 302130)
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 985-7290
Facsimile: (202) 333-2121
amccall@zlk.com

*Attorney for Plaintiff*
*Steven Merola*

**OF COUNSEL:**

**LEVI & KORSINSKY LLP**
Donald E. Enright (to be admitted *pro hac vice*)
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com

*Attorney for Plaintiff*

25

CLASS ACTION COMPLAINT